UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

LEONARD F. GOODMAN,

                Plaintiff,

       – against –

LOCAL 804 UNION OF THE
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS (IBT) *and* UNITED PARCEL
SERVICE INC. (UPS),

               Defendants.

------------------------------------------------------------- X

**MEMORANDUM DECISION AND
ORDER**

21-CV-4655 (AMD) (LB)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this *pro se* action against his former employer, United Parcel Service

("UPS"), and his former union, Local 804 Union.  The plaintiff alleges a claim against UPS for

wrongful termination, a claim against Local 804 for breach of the duty of fair representation

under the National Labor Relations Act ("NLRA"), and a hybrid § 301 Labor Management

Relations Act ("LMRA")/duty of fair representation claim.  Before the Court are the defendants'

motions to dismiss for failure to state a claim.  (ECF Nos. 12, 16.)  For the reasons that follow,

the motions are granted.

## BACKGROUND

On February 28, 2005, the plaintiff started working for UPS as a truck driver at a facility

on Foster Avenue in Brooklyn.  (ECF No. 6 ¶ 1.)  He was fired on November 12, 2020 for

"violence in the workplace," violating UPS's professional conduct and anti-harassment policy

and for "conduct unbecoming a UPSer."  (*Id.* ¶¶ 1-2; *id.* at 11.)  He claims that he was

"wrongfully accused" of sexually assaulting another UPS employee, and that "[t]he only

evidence that was offered against [him] was a written statement by the alleged victim, alleging that [he] inappropriately touched her[.]"  (ECF No. 18 at 5.)  UPS held a hearing that the plaintiff and other UPS and Local 804 representatives attended on December 7, 2020.[1]  After that hearing, UPS informed the plaintiff, "After a review of the facts, it was determined that your discharge would be upheld and your employment with UPS is hereby terminated."  (ECF No. 6 at 11.)

The plaintiff's employment was covered by a collective bargaining agreement (the "CBA") between UPS and Local 804, and included a National Master Agreement (the "NMA") and a Supplemental Agreement.[2]  Article 7 of the NMA provides that a discharged employee must "remain on the job, without loss of pay unless and until the discharge . . . is sustained under the grievance procedure," except in cases involving "cardinal infractions."[3]  (*Id.* at 14.)  Article 12 of the Supplemental Agreement provides in pertinent part that "drinking, or proven or admitted dishonesty" are grounds for immediate suspension or discharge (*id.* at 17), and that "[i]n cases not involving the theft of money or merchandise an employee will remain on the job until a hearing is held with the business agent," which must take place within 72 hours.  (*Id.*)  Article 12 further provides that "[f]or non-cardinal infractions, the employee shall be allowed to remain on the job consistent with Article 7 of the [NMA], without loss of pay unless and until

---

[1] The record does not say whether the plaintiff testified at the hearing.

[2] I consider the CBA provisions because they are attached to the amended complaint and referenced in the pleadings.  *See Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

[3] The parties do not define "cardinal infractions," or refer the Court to the portion of the CBA that defines it.

the discharge or suspension is sustained under the grievance procedure." (*Id.*)  Article 18 of the Supplemental Agreement, which generally establishes procedures for the grievance process, provides that in cases involving discharge or suspension, "an impartial arbitrator shall hear the case with the UPS and Local 804 Panel members and cast the deciding vote in the event of a deadlock." (*Id.* at 18.)  Following his termination, the plaintiff contacted Local 804's shop steward, Juan Acosta, to initiate his grievance in accordance with the CBA.  (ECF No. 6 ¶ 3.)

The plaintiff alleges that UPS terminated him without just cause in violation of Article 7 of the NMA and Article 12 of the Supplemental Agreement.  (*Id.* ¶ 6.)  His claims against Local 804, however, are less clear.  In the amended complaint, the plaintiff alleged that Local 804 "refused to represent Plaintiff by failing to invoke Article 7 of the NMA," and that Local 804 failed to file a complaint on his behalf with the National Labor Relations Board (the "NLRB"). (*Id.*)  In his opposition, however, the plaintiff includes allegations and exhibits that tend to undercut these claims.  For example, he alleges in his opposition that Local 804 "filed a grievance against Defendant UPS on behalf of Plaintiff, alleging that Defendant UPS had violated Plaintiff's right to remain on the job without loss of pay . . . pursuant to Article 7 of the NMA and Supp Article 12[.]"  (ECF No. 18 at 2.)[4]  He also includes new detail about a February 17, 2021 hearing at which the parties arbitrated the grievance before a panel of Local 804 and

---

[4] Although on a motion to dismiss a court is generally constrained to look only at the pleadings, *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 492 (S.D.N.Y. 2013), a court may consider supplemental facts and materials in a *pro se* plaintiff's opposition brief in light of the special solicitude afforded *pro se* litigants. *See Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a *pro se* plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations."); *Elliott v. Nestle Waters N. Am. Inc.*, No. 13-CV-6331, 2014 WL 1795297, at *7 (S.D.N.Y. May 6, 2014) (considering, among other things, an exhibit attached to an opposition brief in part "in light of the policy permitting courts to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss").  Thus, I consider the plaintiff's additional allegations and exhibits to the extent they clarify the complaint.

UPS representatives. (*Id.* at 2-3; ECF No. 18-1 at 4.) A Local 804 representative, Lou Barbone, advocated for the plaintiff at the hearing, and presented a "statement of facts" on his behalf. (ECF No. 18-1 at 6; ECF No. 18-2 at 12, 18.) The panel denied the grievance and upheld the plaintiff's termination. (ECF No. 18 at 3; ECF No. 18-1 at 18.)

As modified by the allegations in his opposition, the plaintiff claims that Local 804 breached its duty of fair representation by "maliciously and with malintent" agreeing with UPS to uphold his discharge at the hearing. (ECF No. 18 at 4, 9.) According to the plaintiff, Local 804's decision prevented "an impartial arbitrator" from deciding his case. (*Id.*) He appears to allege some sort of conspiracy between UPS and Local 804: that union members "entertained and deceived Plaintiff . . . through[out] the grievance process as if they were representing [him], and then at the very end, turned their backs on [him] and secretly sided with [UPS] by agreeing to deny [his] grievance." (ECF No. 18-2 at 17.)

The plaintiff makes other complaints about Local 804's handling of the grievance process, including that the union gave him "two different stories" about the arbitrator's role at the grievance hearing (ECF No. 18-2 at 14); the plaintiff maintains that Local 804 representative Dave Cintron told him that an arbitrator denied his grievance (ECF No. 18 at 3-4, 8; ECF No. 18-1 at 16), while NLRB board agent Brent Childerhose said that a "joint panel agreed to deny the grievance," and that there was "no deadlock," meaning that the CBA did not need an arbitrator "to cast a deciding vote or issue a written decision." (ECF No. 18-1 at 16.) The plaintiff also complains that Mr. Cintron did not answer his May 18, 2021 email, in which he "thank[ed] the union for believing in [his] innocence," and requested "copies of all documents that were presented to the panel during [his] arbitration hearing," as well as "the name of the arbitrator that denied [his] grievance." (ECF No. 18 at 10; ECF No. 18-1 at 8.) He also claims

that the defendants misrepresented his answers to questions on a form about the grievance hearing.  (ECF No. 18 at 10.)  Finally, he asserts that the grievance application form submitted by Local 804 was not signed, suggesting it was a "fake and invalid" grievance, and that NLRB Board Agent Childerhose "refused" to question UPS and the union "about their reasons for not signing" the document.  (ECF No. 18-2 at 19-21, 29.)

On August 16, 2021, the plaintiff, represented by Bennie Smith Jr., filed a complaint with the NLRB against Local 804, alleging that the union unfairly represented him.  (ECF No. 6 ¶ 10; ECF No. 18 at 10; ECF No. 18-1 at 20.)[5]  The NLRB dismissed the plaintiff's complaint in a letter on October 27, 2021, and the plaintiff filed an appeal.  (ECF No. 18-2 at 2, 41-43.)[6]

The plaintiff brought this action on August 18, 2021, asking to be reinstated as a UPS employee.  (ECF No. 6 ¶ 9.)  He also seeks the wages that he would have earned since the termination—approximately $20,000 plus interest—and attorneys' fees.  (*Id.* ¶¶ 1, 9.)

## LEGAL STANDARD

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."

---

[5] Although the plaintiff claims that he filed the NLRB complaint against UPS too (ECF No. 18 at 3), the documents attached to the plaintiff's pleadings show that he filed the complaint only against the Local 804.  (ECF No. 18-1 at 20; ECF No. 18-2 at 41.)

[6] The parties do not say whether the NLRB appeal has been decided.

*Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8.  A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks, alterations and citations omitted).

Because the plaintiff is proceeding *pro se*, I construe his complaint liberally, and evaluate it by "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  The plaintiff's claims must be "read to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal quotation marks and citations omitted).

If a defendant raises a statute of limitations defense in a pre-answer motion to dismiss, that motion "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008).  "An action should be dismissed pursuant to Rule 12(b)(6) where documents properly considered on a motion to dismiss reveal that the action is time barred." *Noboa v. MSC Crociere S.p.A.*, No. 08-CV-2896, 2009 WL 1227451, at *2 (S.D.N.Y. May 5, 2009).

## DISCUSSION

### I.  Wrongful Termination Claim

To the extent that the plaintiff intends to plead a state common law claim against UPS for wrongful termination (ECF No. 6 ¶¶ 1-6), the claim is redundant with his hybrid § 301 claim under the LMRA, and therefore dismissed.[7]

---

[7] I decline to consider UPS's additional argument for dismissing the wrongful termination claim—that the plaintiff did not exhaust his administrative remedies before bringing suit by filing an NLRB complaint against UPS.  (ECF No. 12-1 at 11-12.)

Section 301 of the LMRA "governs actions by an employee against an employer for breach of a collective bargaining agreement." *Dougherty v. Am. Tel. & Tel. Co.*, 902 F.2d 201, 203 (2d Cir. 1990); *see also Heaning v. Nynex-N.Y.*, 945 F. Supp. 640, 645 (S.D.N.Y. 1996). Suits arising under § 301 include "those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay, and wrongful discharge." *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562 (1976) (quoting *Smith v. Evening News Assn.*, 371 U.S. 195, 199 (1962)).

Thus, § 301 preempts state common law claims in cases involving the interpretation of rights and responsibilities under "a collective bargaining agreement, regardless of whether the plaintiff's claims sound in tort or contract." *Cespuglio v. Ward*, No. 03-CV-8603, 2004 WL 1088235, at *3 (S.D.N.Y. May 13, 2004) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)); *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d 63, 69 (E.D.N.Y. 2002) ("[S]tate law suits arising out of allegations of breach of contract or of liability in tort are pre-empted [by § 301] if they are inextricabl[y] intertwined with the CBA and require the court to interpret the terms or legal consequences of a breach of the agreement." (quoting *Lugo v. Milford Mgmt. Corp.*, 956 F. Supp. 1120, 1126 (S.D.N.Y. 1997))). "State law claims, however, are not preempted by federal labor law if they exist independently of a collective bargaining agreement and can be resolved without its interpretation." *Lever v. Entergy Nuclear Operations Inc.*, No. 15-CV-3327, 2016 WL 1627619, at *2 (E.D.N.Y. Apr. 22, 2016) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 (1988)). If a court finds that "resolution of a state-law claim is substantially dependent upon analysis of the terms" of a collective bargaining agreement, "that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Lueck*, 471 U.S. at 220 (internal citation omitted).

The plaintiff claims that UPS violated Article 7 of the NMA and Article 12 of the Supplemental Agreement by firing him without just cause and without adequate notice, and by not allowing him to work during the grievance process. (ECF No. 6 ¶¶ 1-6.) I cannot evaluate the merits of these claims without interpreting the CBA. *Duran*, 216 F. Supp. 2d at 70 (finding that the plaintiff's common law claim for wrongful termination without "just cause" required interpretation of a collective bargaining agreement, as "the CBA control[led] determination of just cause and proper administration of grievance procedures"); *Civardi v. Gen. Dynamics Corp.*, 603 F. Supp. 2d 393, 397-98 (D. Conn. 2009) ("[R]esolution of the plaintiff's wrongful discharge claim is dependent on interpretation of the CBA because any limitation on [defendant's] right to terminate the plaintiff's employment would arise from the CBA and depend upon the meaning and interpretation of the 'just cause' provision. Therefore, this claim does not exist independent of any rights established by the CBA and is preempted by Section 301 of the LMRA.").

Accordingly, because the wrongful discharge claim is "inextricably intertwined" with the terms of the CBA, *Duran*, 216 F. Supp. 2d at 69, the claim is preempted by § 301, and in any event, duplicative of the hybrid § 301 claim addressed below. *See Zahler v. Empire Merchants, LLC*, No. 11-CV-3163, 2012 WL 273698, at *11 (E.D.N.Y. Jan. 31, 2012) (dismissing a plaintiff's wrongful termination claim as preempted by § 301 and as duplicative of her hybrid § 301 claim).[8]

---

[8] To the extent that the plaintiff also means to raise a breach of contract claim against Local 804 for violating Article 18 of the Supplemental Agreement and other CBA provisions (*see* ECF No. 6 ¶ 6), that claim also calls for interpretation of the CBA and is preempted by § 301. *Allis-Chalmers*, 471 U.S. at 220; *see also Lever*, 2016 WL 1627619, at *3 (holding that § 301 preempted a plaintiff's state law claims against a union where the plaintiff, "rel[ying] on the [collective bargaining agreement] as the framework for his claims," alleged that the union violated provisions of the agreement).

## II.     Hybrid Section 301 Claim

A hybrid claim under § 301 of the LMRA "is one which contains allegations against both the employer and the union." *Tand v. Solomon Schechter Day Sch. of Nassau Cnty.*, 378 F. Supp. 2d 120, 121 (E.D.N.Y. 2005) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983)); *Lever*, 2016 WL 1627619, at *4 (While "[a] pure § 301 action is a suit brought directly by a union against an employer to enforce the CBA," "[a] hybrid § 301 claim pairs a claim that the employer breached the collective bargaining agreement with a claim that the union's breach of its duty to fairly represent the employee prevented the employee from exhausting the grievance process." (internal quotation marks and citations omitted)).

The plaintiff alleges that UPS terminated him wrongfully, and that Local 804 did not adequately perform its duty of fair representation in violation of the NLRA.  (ECF No. 6 ¶¶ 1-7.) He also alleges that "[t]he Employer and the Union's conduct towards [him]" violated § 301 of the LMRA.  (*Id.* ¶ 8.)  Even though the plaintiff appears to "plead[] separate counts against the [Local 804] and [UPS] . . . , these allegations together constitute a 'hybrid' claim." *Yearwood v. N.Y. Presbyterian Hosp.*, No. 12-CV-6985, 2013 WL 4713793, at *2 (S.D.N.Y. Aug. 20, 2013); *see also Rosario v. Loc. 1106 Transp. Works of Am.*, 29 F. Supp. 3d 153, 158 (E.D.N.Y. 2014) ("[The plaintiff's] claims against [employer] for wrongful discharge and the Union for breach of the duty of fair representation combine to create a single 'hybrid' cause of action under § 301."). Therefore, the plaintiff's claims are properly analyzed as a single hybrid cause of action under § 301.

### a.     Timeliness

A hybrid § 301/duty of fair representation claim is subject to a six-month statute of limitations.  *DelCostello*, 462 U.S. at 169-72; *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995); *McLeod v. Verizon N.Y., Inc.*, 995 F. Supp. 2d 134, 142 (E.D.N.Y. 2014)

("[T]he appropriate statute of limitations for 'hybrid' actions, *i.e.*, cases involving both claims against the employer under [s]ection 301 and claims against the union for breach of the duty of fair representation, is six months.").  The parties do not dispute the application of this six-month period, but disagree on when the clock began to run.

UPS argues in its motion and reply that the plaintiff's claim accrued on December 7, 2020—the day that UPS told him his discharge was upheld, meaning that the statute of limitations expired on June 7, 2021.  (ECF No. 12-1 at 10-11; ECF No. 19 at 4.)  Although Local 804 makes the same argument in its opening brief (ECF No. 16-1 at 5-6), it argues in its reply that the plaintiff's action is untimely by one day.  (ECF No. 20 at 4-5.)  Based on the new facts in the plaintiff's opposition, Local 804 argues that the claim accrued at the latest on February 17, 2021—the day that the arbitration panel denied his grievance.  (*Id.*)  Under this timeline, the limitations period expired on August 17, 2021, the day before the plaintiff filed suit.  (*Id.*)  In asserting that his action is timely, the plaintiff argues that his claim accrued on May 18, 2021, when he emailed Mr. Cintron to request information about the grievance hearing and did not receive a response.  (ECF No. 18 at 10.)  He explains that "it was at that time that [he] suspected that Defendant Local 804 union and Defendant UPS had deceived [him]."  (*Id.*)

The six-month limitations period for hybrid actions under § 301 begins to run when the employee "knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." *Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014) (quoting *Cohen*, 68 F.3d at 67).  If "a union represents the member through the entirety of the grievance process, the statute of limitations begins to run once the final disposition of that process is issued."  *Cesiro v. Rite*

*Aid of N.Y.*, No. 20-CV-10519, 2022 WL 392907, at *5 (S.D.N.Y. Feb. 9, 2022) (citing *Ghartey*, 869 F.2d at 166).

However, in cases where "a union refuses or neglects to assist a union member, decides to stop assisting a member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Ghartey*, 869 F.2d at 165; *McLeod*, 995 F. Supp. 2d at 143 (finding that the statute of limitations began to run when the plaintiff received a letter from his union advising him that they were no longer proceeding with the case). Nevertheless, "'it is well settled that NLRB proceedings do not toll the six-month statute of limitations applicable to' breaches of the duty of fair representation." *Hosokawa v. Screen Actors Guild-American, Fed. of Television and Radio, Artists*, 234 F. Supp. 3d 437, 442 (S.D.N.Y. 2017) (quoting *Ode v. Terence Cardinal Cooke*, No. 08-CV-1528, 2008 WL 5262421, at *3 (S.D.N.Y. Dec. 12, 2008)).

The plaintiff's claim is that Local 804 did not oppose UPS's alleged violations of the CBA, or represent the plaintiff adequately at the grievance hearing. Local 804's alleged breaches should have been apparent to the plaintiff by the time that the panel heard and denied the grievance on February 17, 2021. Indeed, the plaintiff states that he attended the hearing and thus saw the conduct that forms the basis for his claim. (ECF No. 18-1 at 12-13.) Accordingly, the plaintiff knew or should have known that a breach of the duty of fair representation occurred on the date his grievance process ended. *Rosario*, 29 F. Supp. 3d at 159 (applying *Ghartey* to find that the statute of limitations began to run when the employee's termination was upheld following a grievance process that "ran its full course"); *Forkin v. Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 299-300 (E.D.N.Y. 2019) (finding that the plaintiff "knew or should have known of the alleged breach" on the date a grievance panel upheld the plaintiff's termination); *Civardi*,

603 F. Supp. 2d at 397-98 (plaintiff had six months from the date the arbitrator upheld his termination to bring his claim).

The plaintiff's argument that his claim accrued on May 18, 2021—the day that Mr. Cintron did not answer his email—is not persuasive.  He does not plausibly explain why the absence of a response to an email has any bearing on whether he knew that Local 804 breached its duty of fair representation.  As explained above, the plaintiff knew or should have known about the alleged breach when the panel denied his grievance on February 17, 2021.  *Ghartey*, 869 F.2d at 166.  Moreover, courts in this circuit have held that "once a plaintiff 'learns of the union's breach,' the union's subsequent failure to fairly represent plaintiff 'cannot be treated as a continuing violation that preclude[s] the running of the limitations period.'"  *Rosario*, 29 F. Supp. 3d at 160 (quoting *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995)).

The plaintiff filed the complaint on August 18, 2021, one day after the six-month statute of limitations expired.  (*See* ECF No. 1.)  Absent any basis for tolling, courts have found that complaints are time barred even when they are filed as little as one day late.  *See Mathews v. Ercole*, No. 09-CV-694, 2009 WL 2340671, at *2 (E.D.N.Y. July 29, 2009) ("[T]he courts have held that even one day late is beyond the limitations period." (citing *Richard v. Rock*, No. 08-CV-145, 2009 WL 383762, at *7 (N.D.N.Y. Feb. 10, 2009), and *United States v. Locke*, 471 U.S. 84, 101 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline; yet regardless of where the cutoff line is set, some individuals will always fall just on the other side of it."))).  Accordingly, the plaintiff's complaint is untimely.

The plaintiff has not identified any basis for equitable tolling, which requires showing (i) "the defendant made a definite misrepresentation of fact, and had reason to believe that the

plaintiff would rely on it"; and (ii) "the plaintiff reasonably relied on that misrepresentation to

his detriment."  *Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 176 (2d Cir.

2000) (quoting *Buttry*, 68 F.3d at 1493).  Nevertheless, *Abbas v. Dixon*, 480 F.3d 636 (2d Cir.

2007) instructs that a district court should typically not dismiss a complaint as time barred unless

the court provides a *pro se* plaintiff with "notice and opportunity to be heard."  *Id.* at 640 (noting

that the pleading requirements in the Federal Rules of Civil Procedure "do not compel a litigant

to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively

plead facts in avoidance of such defenses").

     For these reasons, I dismiss the plaintiff's hybrid § 301 action as time barred, but grant

him leave to amend his complaint within 30 days of this order to include allegations, if any, that

justify equitable tolling.[9]

### b.    Failure to State a Claim

     Even assuming the claims are timely, the action against UPS and Local 804 must

nonetheless be dismissed on the ground that the plaintiff has not sufficiently stated a claim for

relief.

     To establish a § 301 hybrid claim, a plaintiff must "prove both (1) that the employer

breached a collective bargaining agreement and (2) that the union breached its duty of fair

representation vis-a-vis the union members."  *White v. White Rose Food, a Div. of DiGiorgio

Corp.*, 237 F.3d 174, 178 (2d Cir. 2001) (citation omitted); *Tomney v. Int'l Ctr. for the Disabled*,

357 F. Supp. 2d 721, 738 (S.D.N.Y. 2005) ("It is well-settled that an employee may maintain a

breach of contract action based upon a CBA directly against the employer only if 'the employee

---

[9] *See, e.g.*, *Corley v. Farrell*, No. 16-CV-3367, 2016 WL 3950080, at *4 (E.D.N.Y. July 19, 2016)
(dismissing complaint filed *in forma pauperis* as time barred by the statute of limitations but granting
plaintiff leave to amend in order to provide plaintiff with an opportunity to explain why his claims are
not time barred).

can prove that the union as bargaining agent breached its duty of fair representation in its

handling of the employee's grievance.'" (quoting *Vaca v. Sipes*, 386 U.S. 171, 186 (1967))).

"[A] union breaches the duty of fair representation when its conduct toward a member of

the bargaining unit is arbitrary, discriminatory, or in bad faith." *Sanozky v. Int'l Ass'n of*

*Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (quoting *Marquez v. Screen*

*Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)).  A finding of arbitrary conduct is appropriate only if

"the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air*

*Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991).  A finding of "bad faith requires a

showing of fraudulent, deceitful or dishonest action." *White*, 237 F.3d at 179 (quoting *Sim v.*

*N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)).  In addition to establishing

arbitrariness or bad faith, a plaintiff must show that such conduct caused his injuries. *Hofmann*

*v. Schiavone Contracting Corp.*, 630 F. App'x 36, 39 (2d Cir. 2015) (summary order) (citing

*Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

Given these standards, a plaintiff faces an "enormous burden" in establishing that his

union breached this duty. *Wolfinger v. Consolidated Edison Co. of N.Y., Inc.*, No. 17-CV-1710,

2018 WL 3637964, at *6 (E.D.N.Y. July 31, 2018) (quoting *Nicholls v. Brookdale Univ. Hosp.*

*& Med. Ctr.*, No. 05-CV-2566, 2005 WL 1661093, at *7 (E.D.N.Y. July 14, 2006)).  A district

court's review of an alleged breach of a union's duty of fair representation is "highly deferential,

recognizing the wide latitude that negotiators need for the effective performance of their

bargaining responsibilities." *O'Neill*, 499 U.S. at 78 (citations omitted).  Moreover, "[t]he

grievance process cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.*,

424 U.S. 554, 571 (1976).  "Tactical errors are insufficient to show a breach of the duty of fair

representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).

The plaintiff alleges that Local 804 breached its duty of fair representation because the union did not process his grievance properly (ECF No. 6 ¶¶ 6-7, 10), did not argue that UPS breached the CBA (*id.*), agreed with UPS members on the grievance panel to uphold his termination, which deprived him of the chance to have his grievance decided by an "impartial arbitrator" (ECF No. 18 at 4, 9), did not respond to his May 18, 2021 email from about the grievance hearing (*id.* at 10), misrepresented the plaintiff's answers on a form about the grievance hearing (*id.*), and submitted a grievance application form that was "fake and invalid." (ECF No. 18-2 at 19-21, 29.)

None of these allegations rises to the level of bad faith, arbitrary or discriminatory conduct. Even accepting as true the plaintiff's allegation that Local 804 did not "invoke" Article 7 of the NMA or Article 12 of the Supplemental Agreement, that failure "does not imply bad faith, but rather error or mere negligence." *Felton v. Loc. Union 804, Int'l Bhd. of Teamsters*, No. 17-CV-2309, 2019 WL 1046952, at *4 (E.D.N.Y. Mar. 5, 2019) (citing *Barr*, 868 F.2d at 43 ("[F]ailure to prepare adequately for arbitration does not rise to the level of arbitrariness or bad faith.")).

The plaintiff's allegations that Local 804 acted "maliciously and with malintent" because its grievance panel members agreed with UPS are similarly deficient. (ECF No. 18 at 4, 9.) He claims that the fact that his grievance "was never decided by an arbitrator" shows that Local 804 "conspired with [UPS] by secretly agreeing with [UPS] to uphold [his] discharge." (ECF No. 18-2 at 10.) However, the allegations that the defendants conspired against him at his hearing, committing "an act of fraud" (*id.*), are conclusory, and provide no factual support for a

conspiracy claim.  *See Barr*, 868 F.2d at 43 ("In order to have prevailed against the union, [the

plaintiff] would had to show either that the conspiracy existed or that these tactical decisions . . .

amounted to conduct and omissions so egregious, so far short of minimum standards of fairness

to the employee and so unrelated to legitimate union interests as to be arbitrary." (internal

quotation marks and citation omitted)); *Forkin*, 394 F. Supp. at 302-03 (rejecting hybrid § 301

claim premised on allegations that defendants conspired against the plaintiff because the

allegations were "conclusory and fail[ed] to factually support a conspiracy claim" (citing

*Caldarera v. Int'l Longshoremen's Ass'n, Loc. 1*, 765 F. App'x 483, 486 (2d Cir. 2019))).

     Moreover, although the plaintiff claims that the union's decision prevented his grievance

from being "decided by an impartial arbitrator" (ECF No. 18 at 4), he does not plausibly allege

why this amounts to unfair representation.  In *Forkin*, the plaintiff also argued that Local 804, the

defendant in this case, conspired with UPS to violate his rights, because it did not allow an

arbitrator to decide the outcome of his hearing.  *See* 394 F. Supp. at 302.  Chief Judge Margo

Brodie reviewed Article 17 of the Supplemental Agreement—which requires only that "an

impartial arbitrator . . . cast the deciding vote in the event of a deadlock"—and concluded that

Forkin did not "plausibly allege that an impartial arbitrator was needed to cast the deciding

vote," because he did not allege that the panel was deadlocked.  *Id.*  The same analysis applies

here.  The plaintiff does not allege that the panel was deadlocked, or that an impartial arbitrator

needed to decide his hearing.  While the plaintiff says that he got conflicting information about

the arbitrator's role, the facts alleged do not demonstrate that Local 804's conduct was

"fraudulent, deceitful or dishonest," *White*, 237 F.3d at 179, or "so far outside a 'wide range of

reasonableness' as to be irrational," *O'Neill*, 499 U.S. at 67.  On the contrary, the allegations

suggest that Mr. Cintron and Mr. Childerhose misspoke or, at worse, were negligent, which is

insufficient to state a claim for breach of the duty of fair representation.  *See Barr*, 868 F.2d at 43.  Similarly, the plaintiff's remaining claims—that that the union did not respond to his May 18, 2021 email and made mistakes on forms about his grievance hearing—are insufficient to show that the union acted either deceitfully or irrationally.

For these reasons, the plaintiff has not met his "enormous burden" of demonstrating that Local 804 breached its duty of fair representation.  *Wolfinger*, 2018 WL 3637964, at *6.  None of his claims "'remotely approach[es] the onerous standards of irrationality, unlawfulness or deceit necessary' to state a claim for the breach of the duty of fair representation."  *Pilchman v. Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, No. 10-CV-4976, 2011 WL 4526455, at *13 (S.D.N.Y. Sept. 29, 2011) (quoting *Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 595 (S.D.N.Y. 2006)).  Therefore, the plaintiff does not state a hybrid § 301/fair representation claim against UPS and Local 804.[10]

## CONCLUSION

Because the plaintiff's claims are untimely and do not plausibly state a hybrid § 301/fair representation claim, the defendants' motions are granted and the amended complaint is dismissed.  Nevertheless, a court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations and quotation marks omitted).  Because the plaintiff is proceeding *pro se*, I grant him leave to amend his complaint within 30 days from the date of this order.  If the plaintiff amends his complaint, the new complaint should be captioned "Second Amended Complaint" and be filed on docket number 21-CV-4655.

---

[10] Because the plaintiff has not sufficiently alleged that Local 804 breached its duty of fair representation, I do not determine whether UPS breached the CBA.

17

The plaintiff is advised that a second amended complaint will replace all previously-filed complaints, and must cure the deficiencies discussed in this opinion.  To that end, the plaintiff must allege, if he can, that there are circumstances that justify equitable tolling of the applicable six-month statute of limitations, and he must make specific factual allegations as to the union's bad faith or arbitrary conduct beyond what the plaintiff has already pled in his previous complaints.

If the plaintiff does not file an amended complaint 30 days from the date of this order or if he files a complaint that does not cure the deficiencies discussed in this order, this case will be closed.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge

Dated:  Brooklyn, New York
          September 29, 2022