UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                 :
**LEONARD F. GOODMAN**, :
                 :
            Plaintiff, :  **MEMORANDUM DECISION AND ORDER**
                 :
   – against – :
                 :  21-CV-4655 (AMD) (LB)
**LOCAL 804 UNION OF THE** :
**INTERNATIONAL BROTHERHOOD OF**
**TEAMSTERS (IBT)** and **UNITED PARCEL** :
**SERVICE INC. (UPS)**, :

            Defendants.
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff brings this *pro se* action against his former employer, United Parcel Service ("UPS"), and his former union, Local 804 Union. He alleges a hybrid §301 Labor Management Relations Act ("LMRA")/duty of fair representation claim. I dismissed the plaintiff's Amended Complaint on September 29, 2022, because it was untimely and did not state a claim under Federal Rule of Civil Procedure 12(b)(6); I gave the plaintiff leave to amend because of his *pro se* status. (ECF No. 24.) The plaintiff filed a Second and then a Third Amended Complaint. (ECF Nos. 26, 30.) The defendants move to dismiss the Third Amended Complaint because it does not cure the deficiencies identified in the September 2022 Order. (ECF Nos. 37, 38.) For the reasons that follow, the defendants' motions are granted.

## BACKGROUND[1]

The plaintiff was a truck driver for UPS for approximately 15 years.  On November 12, 2020, UPS fired him for "violence in the workplace, violating UPS's professional conduct and anti-harassment policy and for conduct unbecoming a UPSer."  (ECF No. 24 at 1 (cleaned up).)  In plain terms, UPS accused the plaintiff of sexually assaulting his co-worker—an accusation the plaintiff has always disputed.

The plaintiff's employment was covered by a collective bargaining agreement ("CBA"), which included a National Master Agreement ("NMA") and a Supplemental Agreement.  Article 7 of the NMA that was in force in 2020 and 2021 provided that a discharged employee must "remain on the job, without loss of pay unless and until the discharge . . . is sustained under the grievance procedure," except in cases involving "cardinal infractions."  (ECF No. 30 ¶ 3.)  Article 12 of the Supplemental Agreement provided that "drinking or proven or admitted dishonesty" are grounds "for immediate suspension or discharge," and that "[i]n cases not involving the theft of money or merchandise an employee will remain on the job until a hearing is held with the business agent."  (*Id.* ¶¶ 5–6.)  Article 12 further provided, however, that "[f]or non-cardinal infractions, the employee shall be allowed to remain on the job consistent with Article 7 of the [NMA], without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure."  (*Id.* ¶ 8.)  Finally, Article 18 of the Supplemental Agreement provided that in cases involving discharge or suspension, "an impartial arbitrator shall hear the case with the UPS and Local 804 Panel members and cast the deciding vote in the event of a deadlock."  (*Id.* ¶ 9.)

---

[1] I assume the parties' familiarity with the facts and discuss them only insofar as necessary to resolve the defendants' motions.  (*See* ECF No. 24 at 1–5 (providing comprehensive factual background).)

Following his termination, the plaintiff contacted Local 804's shop steward to initiate his grievance in accordance with the CBA. (ECF No. 24 at 3.) The plaintiff sought reinstatement, because he believed that UPS fired him without just cause. (*Id.*) He also sought backpay for the three months between his firing and the grievance hearing under Article 7, because he was not fired for "drinking or proven or admitted dishonesty." (*Id.*) Local 804 and UPS held a grievance hearing on February 17, 2021. (*Id.* at 3–4.) After the hearing, a union representative told the plaintiff that "an arbitrator denied" his grievance. (*Id.* at 4.)

In the Amended Complaint, the plaintiff alleged that UPS violated the CBA because it fired him without just cause and refused to keep him on the job until the grievance hearing was completed. (*Id.* at 3.) He also argued that Local 804 "refused to represent" him, gave him two different stories about what happened at the hearing and did not answer his email, among other things. (*Id.* at 3–4.)

I dismissed those claims in the September 2022 Order. I found that §301 of the LMRA preempted any common law claim for wrongful termination against UPS and construed the plaintiff's Amended Complaint to raise a hybrid §301 claim. (*Id.* 6–8.) A hybrid claim under §301 "pairs a claim that the employer breached the collective bargaining agreement with a claim that the union's breach of its duty to fairly represent the employee prevented the employee from exhausting the grievance process." (*Id.* at 9 (quoting *Lever v. Entergy Nuclear Operations Inc.*, No. 15-CV-3327, 2016 WL 1627619, at *4 (E.D.N.Y. Apr. 22, 2016)).) I dismissed the §301 claim as untimely by one day. As I explained, the six-month limitations period began "to run once the final disposition of [the grievance] process [was] issued," which in this case was February 17, 2021, the day the grievance hearing concluded and the plaintiff learned of the

3

adverse decision.  (*Id.* at 10–11 (quoting *Cesiro v. Rite 11 Aid of N.Y.*, No. 20-CV-10519, 2022 WL 392907, at *5 (S.D.N.Y. Feb. 9, 2022)).)

Alternatively, I held that the plaintiff did not state a claim under §301 because he did not plead sufficient facts to show that Local 804 breached its duty of fair representation.  (*Id.* at 13–17.)  A "union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith."  (*Id.* at 14 (quoting *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005)).)  I found that the plaintiff's allegations against Local 804 were not entirely "clear," but that he appeared to argue that union representatives made tactical errors during the grievance hearing and mischaracterized the hearing process.  (*Id.* at 3–5, 16.)  I held that those actions were at most "negligen[t]" and did not "rise[] to the level of bad faith arbitrary or discriminatory conduct."  (*Id.* at 15–16 (cleaned up).)  Nevertheless, I gave the plaintiff an opportunity to amend his complaint to allege facts that would justify equitable tolling of the limitations period and to include more facts establishing that Local 804 acted arbitrarily or discriminated against him.

In the Third Amended Complaint, the plaintiff claims that Local 804 representatives lied to him about who denied his grievance.  Although the representatives claimed that an impartial arbitrator denied his claim, the arbitrator did not vote at all because the Local 804 representatives sided with the UPS representatives and there was no deadlock for the arbitrator to break.  The plaintiff argues that the agreement between the Local 804 and UPS representatives constituted a "CONSPIRACY" to deprive him of a fair hearing.  (ECF No. 30 ¶ 44.)  In addition, he argues that the agreement meant that Local 804 never represented him at all.  In the plaintiff's words:

> Local 804 cannot sign an agreement to have one of its members discharged and then turn around and claim that the Union represented that member too.  THAT MAKES NO SENSE.  It cannot be both.  Also there is a saying that when a Local Union accepts and processes a member's grievance as Local 804 Union claims that

4

> it did for Plaintiff, that grievance now becomes the Union's grievance. . . . Th[at] means the Union President . . . denied his very own grievance that he permitted the Union to process.

(*Id.* ¶ 32.) Viewing the events in this way, the plaintiff argues, is also relevant to the question of the timeliness of the complaint. The six-month limitations period for hybrid actions under §301 begins to run when an employee "knew or reasonably should have known that such a breach of the duty of fair representation had occurred." *Scerba v. Allied Pilots Ass'n*, 589 F. App'x 554, 556 (2d Cir. 2014) (citation omitted). That typically happens when the employee learns of an adverse decision; however, when "a union refuses or neglects to assist a union member, decides to stop assisting a member, or acts against the interests of a member, a breach of duty by the union is apparent to the member at the time she learns of the union action or inaction about which she complains." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 165 (2d Cir. 1989) (citations omitted). Because the essence of the plaintiff's claim is that Local 804 did not represent him at all, the plaintiff argues that the statute of limitations began to run only when he found out about the lack of representation. That occurred on October 5, 2021, when the NLRB investigation "confirmed . . . that an arbitrator did not deny Plaintiff's grievance;" rather, "Local 804 arbitrarily agreed with UPS to . . . uphold Plaintiff's . . . discharge." (ECF No. 30 ¶ 31.)

The plaintiff also adds a discrimination claim to his complaint. He alleges that Local 804 "treat[ed] Plaintiff differently" than another employee who was also accused of sexually assaulting a coworker. (*Id.* ¶ 60.) Like the plaintiff, that employee was fired. However, unlike the plaintiff, that employee received backpay for the period between his firing and the grievance hearing. According to the plaintiff, this means that he is also entitled to backpay.

## STANDARD OF REVIEW

To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although "detailed factual allegations" are not required, a complaint that includes only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; Fed. R. Civ. P. 8. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).

Because the plaintiff is proceeding *pro se*, I construe his complaint liberally and evaluate it by "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), to raise "the strongest arguments" that it suggests, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (cleaned up).

The defendants' statute of limitations defense "is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted." *Ghartey*, 869 F.2d at 162. "An action should be dismissed pursuant to Rule 12(b)(6) where documents properly considered on a motion to dismiss reveal that the action is time barred." *Noboa v. MSC Crociere S.p.A.*, No. 08-CV-2896, 2009 WL 1227451, at *2 (S.D.N.Y. May 5, 2009).

## DISCUSSION

The plaintiff's new allegations do not cure the deficiencies I identified in the September 2022 Order. Citing *Ghartey*, 869 F.2d at 165, and *McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014), the plaintiff argues that his claim accrued on October 5, 2021, when he learned that the arbitrator took no part in the decision. The plaintiff claims that those courts held that the limitations clock starts when "a breach of duty by the union [becomes] apparent to the member," even if that happens months after he learns that his grievance was

6

denied. *Ghartey*, 869 F.2d at 165. The plaintiff misinterprets those cases. In both cases, the courts held that when breaches become apparent before the end of the grievance proceedings—for example, when an employee is "left to go it alone"—the claim accrues earlier as well. *Id.* As the Second Circuit put it, under these circumstances, "it would indeed be nonsensical to say that the member . . . only learns of the union's breach later, when she suffers an adverse result." *Id.*; *see also McLeod*, 995 F. Supp. 2d at 143 (same).

      The plaintiff does not challenge the way the union handled his hearing; instead, he challenges the way all grievance hearings are conducted under the CBA. His grievance is that Article 18 is unfair, because it permits Local 804 representatives to conspire with UPS representatives and deprives employees of a hearing before an impartial arbitrator. But the plaintiff was aware of Article 18's provisions before the hearing took place. (*See* ECF No. 30 ¶ 36 (acknowledging that the "collective bargaining agreement clearly states that the Local 804/UPS Panel is composed of employees of Local 804 and UPS").) And when he appeared at the hearing on February 17, 2021, he saw that the panel was composed of two UPS representatives, two Local 804 representatives and one arbitrator. (*See id.* ¶¶ 30, 35–36.) Therefore, the plaintiff knew even before the hearing began that the arbitrator would not take any part in the decision unless there was a tie. The fact that he did not learn how Local 804 representatives actually voted until October 5, 2021 does not change this analysis, because those representatives did not violate the CBA. Accordingly, under the reasoning of *Ghartey* and *McLeod*, the statute of limitations began to run on February 17, 2021 at the latest.[2]

---

[2] Under the more lenient analysis—which I applied in the September 2022 Order—the limitations clock "begins to run once the final disposition of [the grievance] process is issued." (ECF No. 24 at 10–11 (quoting *Cesiro*, 2022 WL 392907, at *5).) In his Amended Complaint, the plaintiff alleged that he learned of the adverse panel decision on February 17, 2021; accordingly, I found his claim untimely by one day. (*Id.* at 11–12.) The plaintiff now claims that he did not learn of the adverse outcome until a "couple of days later." (ECF No. 30 No. ¶ 30.) Local 804 argues that I should not accept this new

In any event, the plaintiff's new allegations do not state a claim under §301. As I explained in the September 2022 Order, "an employee may maintain a breach of contract action based upon a CBA directly against the employer only if the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." (ECF No. 24 at 13–14 (cleaned up).) These claims typically involve a union's decision not to process an employee's grievance at all or to provide truly deficient representation that goes beyond mere tactical errors. *See Forkin v. Loc. 804 Union (IBT)*, 394 F. Supp. 3d 287, 301–02 (E.D.N.Y. 2019).

The plaintiff does not argue anything like that in this case; on the contrary, he concedes that Local 804 followed the procedures set forth in the CBA. He argues only that the composition of grievance panel under the CBA is so unfavorable to the employees that it amounts to a conspiracy between Local 804 and UPS. I rejected this claim in the previous order, because the plaintiff does not have an inherent right to have his grievance decided by an impartial arbitrator. (ECF No. 24 at 16.) Other courts in this Circuit have reached the same conclusion. *E.g.*, *Forkin*, 394 F. Supp. 3d at 302 (dismissing identical claim); *Bejjani v. Manhattan Sheraton Corp.*, No. 12-CV-6618, 2013 WL 3237845, at *15–16 (S.D.N.Y. June 27, 2013) (allegations about a union's ability "to form agreements that disadvantage certain groups

---

allegation, because it "is not only inconsistent with Plaintiff's prior sworn statement, it is inconsistent with the entirety of the record evidence submitted by Plaintiff to the Court." (ECF No. 38-1 at 4 (collecting citations to the record).) Moreover, Local 804 contends, this pleading is "well beyond that which was sanctioned by the Court in allowing Mr. Goodman one final chance . . . at repleading" (*id.*). *See also Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) ("District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."). I do not decide this issue because the plaintiff does not make any arguments based on this new allegation—not even in response to Local 804's objections. He merely asks me to rule that his claim is timely under *Ghartey* and *McLeod*. In any event, the plaintiff does not plead sufficient facts to state a claim under §301.

8

of employees" did not "plausibly [allege] the existence of a conspiracy that infused [the union's] otherwise-lawful actions with bad faith"), *aff'd*, 567 F. App'x 60 (2d Cir. 2014).

Nor did Local 804 breach its duty of fair representation when it told the plaintiff that the arbitrator made the final decision.  As I explained in the September 2022 Order, Local 804's representatives "misspoke or, at worse were negligent, which is insufficient to state a claim for breach of the duty of fair representation." (ECF No. 24 at 16–17 (citation omitted).)  The plaintiff does not plead any new facts that would lead me to reconsider that decision.  But even if the Local 804's representatives intended to "deceive[]" the plaintiff (ECF No. 30 ¶¶ 27–31), the deceit itself did not harm the plaintiff—the adverse panel decision did.  Because there is no "causal connection" between the alleged lie and the plaintiff's injuries, the plaintiff cannot state a claim under §301.  *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, No. 99-CV-4341, 2002 WL 32152292, at *8 (E.D.N.Y. Nov. 4, 2002) (citing *Spellacy v. Airline Pilots Ass'n Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

Finally, the plaintiff claims that Local 804 breached its duty of fair representation because it treated him differently than another employee, who was fired for the same offense yet received backpay.  "To establish a prima facie claim of discrimination against a union in connection with grievance representation, a plaintiff is required to show that: (1) the company committed a violation of the collective bargaining agreement with respect to plaintiff; (2) the Union permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) there was some indication that the Union's actions were motivated by discriminatory animus."  *Vaughn v. Am. Tel. & Tel. Co.*, 92 F. App'x 21, 23 (2d Cir. 2004).  Even if UPS violated the CBA when it discharged the plaintiff immediately without pay, the plaintiff cannot satisfy the second and third prongs of this test.  The plaintiff does not claim that his Local 804

9

advocate did not ask for backpay, only that those efforts did not produce a favorable result.  As discussed above, that does not establish a breach of duty of fair representation.  Moreover, the plaintiff provides no factual allegations demonstrating that Local 804 "discriminated against him based on race, national origin, religion, or disability."  *Id.*  He merely cites one example of an employee who received backpay under similar circumstances.  Indeed, he also provides an example of an employee who, like himself, did not receive backpay.  (*See* ECF No. 41 ¶ 29.)  That is not sufficient to demonstrate discriminatory animus.[3]

## CONCLUSION

The defendants' motions to dismiss are granted.  The plaintiff's complaint is dismissed with prejudice.  The Clerk of Court is respectfully requested to close this case, enter judgment, mail a copy of this Order to the plaintiff at the address he provided and note the mailing on the docket.

**SO ORDERED.**

                  s/Ann M. Donnelly

                  ANN M. DONNELLY
                  United States District Judge

Dated: Brooklyn, New York
    September 26, 2023

---

[3] Because the plaintiff has not sufficiently alleged that Local 804 breached its duty of fair representation, I do not consider whether UPS breached the CBA by firing the plaintiff without just cause or whether the plaintiff exhausted his administrative remedies against UPS.